**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JACOB SANDLER, a minor, by his
parents and next friends, Jon and
Kay Sandler; JON SANDLER; KAY
SANDLER,

*Plaintiffs-Appellants,*

v.

MICHAEL HICKEY, officially as
Superintendent, Howard County
Public Schools; BOARD OF
EDUCATION OF HOWARD COUNTY,

*Defendants-Appellees.*

No. 00-1156

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-1816-S)

Argued: January 25, 2001

Decided: March 8, 2001

Before WILKINSON, Chief Judge, WILKINS, Circuit Judge,
and James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

___

Reversed and remanded by unpublished per curiam opinion.

___

**COUNSEL**

**ARGUED:** Michael Jeffrey Eig, EIG, PARKER & STARBUCK,
Washington, D.C., for Appellants. Jeffrey Alan Krew, Columbia,
Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

In this action arising under the Individuals with Disabilities Education Act (IDEA), *see* 20 U.S.C.A. § 1400-1487 (West 2000), Jacob Sandler, by and through his parents Jon and Kay Sandler (collectively, "the Sandlers"), appeals an order of the district court granting summary judgment in favor of the Board of Education of Howard County, Maryland and its superintendent (collectively, "the Board") on the Sandlers' claim for reimbursement of Jacob's private school tuition. We conclude that this action is not precluded by any failure by the Sandlers to notify the Board of their intention to enroll Jacob in nonpublic school. We accordingly reverse and remand for further proceedings.

I.

A.

The IDEA is designed "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *Id.* § 1400(d)(1)(A). *See generally id.* § 1400(c), (d) (describing need for and purposes of the IDEA). A state may qualify for federal funds under the IDEA by adopting "policies and procedures to ensure that it meets" several enumerated conditions. *Id.* § 1412(a). One condition is that all children with disabilities are provided a "free appropriate public education" (FAPE). *Id.* § 1412(a)(1). Another condition is that education agencies and intermediate educational units provide assurance that they will develop an "individualized education program" (IEP) for each eligible "child with a disability" at the beginning of each school year. *Id.* § 1412(a)(4). If the local school system does not make a FAPE available in a timely manner, parents of chil-

dren who have previously received special education under authority of a public agency may unilaterally enroll their child in private school and seek reimbursement for the cost of enrollment. *See id.* § 1412(a)(10)(C)(ii).

As a participating state, Maryland has enacted laws designed to satisfy the IDEA conditions. A provision of the Maryland Code states in pertinent part:

> (a) *Basis for placement.* — A child with a disability who needs special education and related services that cannot be provided in a public county, regional, or State program shall be placed in an appropriate nonpublic educational program that offers these services.

> (b) *Payment of cost — In general.* — The cost of the nonpublic educational program shall be paid by the State and the county in which the child is domiciled in accordance with § 8-415(d) of this subtitle, as appropriate.

Md. Code Ann., Educ. § 8-406 (1999). Reimbursement for private school tuition in the absence of a referral by or consent from the local school system is available if an impartial hearing officer or court determines that the child "had previously received special education and related services under the authority of the local school system" and that "the local school system had not made FAPE available to the student in a timely manner before the parent enrolled the student in the nonpublic school." Md. Regs. Code tit. 13A, § 13A.05.01.16(B)(3)(d) (1999). Of particular relevance here is Md. Code Ann., Educ. § 8-413(i)(1) (1999), which provides in pertinent part that a parent who enrolls a child in nonpublic school is not entitled to tuition reimbursement if the parent "does not provide to the county board prior written notice rejecting the program proposed by the county board, including the reason for the rejection, and stating an intention to enroll the student in a nonpublic school."

### B.

Jacob is a "child with a disability" as defined by the IDEA. *See* 20 U.S.C.A. § 1401(3)(A). Jacob was a student in the Howard County

Public School System (HCPS) in Maryland during his first, second, seventh, and eighth grade school years, the last year being the 1995-96 school year. During the seventh and eighth grades, Jacob received special education services from HCPS at Burleigh Manor Middle School. However, because Jacob did not perform well at Burleigh Manor, and on the recommendation of HCPS personnel, the Sandlers removed Jacob from public school. For the 1996-97 and 1997-98 school years, Jacob was enrolled in a number of private schools at his parents' expense. On February 11, 1998, the Sandlers transferred Jacob to the Grove School in Connecticut, a private residential education program.

In late February 1998, the Sandlers requested that the HCPS conduct an evaluation "to fund Jacob's schooling at Grove." J.A. 5. The Sandlers submitted an enrollment form to the HCPS and attended meetings to shape an appropriate IEP for Jacob in May and October of 1998. In January 1999, HCPS approved an IEP for Jacob that recommended a 45-day diagnostic placement at Wilde Lake High School. A subsequent meeting was then scheduled.

Before that meeting occurred, however, the Sandlers requested a hearing regarding reimbursement for Jacob's private placement at the Grove School on the basis that HCPS had incorrectly determined that Jacob did not require a residential placement. *See* Md. Code Ann., Educ. § 8-413(c)(1) (1999). The Board moved to dismiss before an administrative law judge (ALJ), contending, *inter alia*, that the Sandlers had failed to provide the Board with prior notification of private placement as required by Md. Code Ann., Educ. § 8-413(i)(1). Following a hearing conducted over the telephone, the ALJ granted the motion to dismiss. The Sandlers then filed a complaint in district court against the Board, primarily seeking reimbursement for Jacob's tuition at the Grove School for the 1998-99 school year. The district court granted summary judgment in favor of the Board, determining as a matter of law that the Sandlers had failed to comply with § 8-413(i)(1).

## II.

We review the grant of summary judgment de novo. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir.

1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Sandlers contend that § 8-413(i)(1) does not apply to them because no IEP had been proposed when the Sandlers enrolled Jacob in the Grove School, and therefore there was no proposal to reject. We agree.[1]

It is undisputed that no IEP had been proposed for Jacob when he enrolled in the Grove School for the 1998-99 school year;[2] accordingly, no notice of rejection of any IEP was possible at that point. To preclude the Sandlers from attempting to obtain reimbursement solely because they failed to give notice that it was impossible for them to give would be an absurd result, and we do not interpret the statute to have that effect. *See Smack v. Dep't of Health & Mental Hygiene*, 759 A.2d 1209, 1214 (Md. Ct. Spec. App. 2000) (explaining that in interpreting statutes, courts should seek to avoid absurd results). Rather, we interpret § 8-413(i)(1) to apply only when an IEP has been proposed prior to the time the child is enrolled in the nonpublic school.[3]

We note that interpreting § 8-413(i)(1) in this manner will not allow parents simply to bypass the step of attempting to obtain a FAPE within the context of the public school system: Parents who unilaterally choose private school for their children may receive reim-

---

[1]Because we reverse on this ground, we do not address the Sandlers' other arguments.

[2]The ALJ and district court interpreted § 8-413(i)(1) to require notice prior to pursuit of a reimbursement action. However, the statute plainly requires notice prior to the enrollment in the private school for which the parent seeks reimbursement.

[3]Furthermore, we note that the Board was in no way prejudiced by any lack of notice here. The Board itself contends that from the beginning of the IEP proceedings it was apparent that the Sandlers would be satisfied with nothing less than placement in the private school Jacob was then attending. Under these circumstances, any rejection of a proposed IEP would have been little more than a formality.

bursement only upon a finding by an impartial hearing officer or court that "the local school system had not made FAPE available to the student in a timely manner before the parent enrolled the student in nonpublic school." Md. Regs. Code tit. 13A, 13A.05.01.16(B)(3)(d)(ii). Accordingly, parents who enroll their children in nonpublic school without affording the local school system an opportunity to provide a FAPE in a timely fashion will not be entitled to reimbursement.[4]

## III.

In sum, because we hold that § 8-413(i)(1) does not bar the Sandlers' reimbursement action, we reverse the grant of summary judgment against them and remand for further proceedings consistent with this order.

*REVERSED AND REMANDED*

---

[4]We do not decide whether the Sandlers afforded the local school system such an opportunity here.